Rüffin, C. J.
 

 Jacob Forney died in the latter part of 1840, having previously made his will, hearing date the 11th day of January of that year. He therein first gave to his wife sundry slaves and other things absolutely; and then ' one third part of his lands and sundry other slaves for her Ufe. The will then proceeds: “My will is, that all the bal-' atice of my property shall be divided equally amongst my ; ten children and their heirs; the amount they have hitherto -
 
 *182
 
 severally received to be estimated as a part of their shares.” testator then specifies the value of the advancement to each child; for whieh he or she should account in the division. Then follow theclauses following: “The balance of & my property, to wit, the tract of land on which I live, containing 3,000 acres, more or less, situate &c.; and the following slaves, Cinda <fcc. and their increase, and all other property of mine, I give and bequeath to my executors hereinafter named, the survivors or survivor of them and the heirs of the survivor, in trust for the following purposes: At my death my executors shall take possession of the said property, and divide it into ten equal shares, including the amounts above set forth ns received by the several children, and making those amounts parts of their shares: After having thus divided the property, real and personal, and equalized the shares, my executors, or the survivor &c., shall deliver to my daughter F. E. Tate and my son Daniel their several sitares, to hold to them and their heirs forever. The remaining eight shares to remain in the hands of my executors &c., and to be managed to the best advantage, so as to accumulate as fast as possible. And whenever my daughters, Mary and Catherine shall marry or come of age, anew division must be made, and the shares of my said daughters, increased by the profits, if any, in their just proportion, shall be assigned to them and their heirs: And, inasmuch as my fsons, Thomas, Albert, Marcus, Isaac, Peter and James, are ] deeply involved in debt, and I have good reason to believe : that, if the property bequeathed to them were to vest in them at the time of' my death', it would be sacrificed at public sale .without releasing them from their, difficulties; and as my ’special desire is, that they should be personally benefitted by \vbat property I may bequeath to thorn, I. will and desire that the property remain vested in ray executors, the survivor &c., until they.shall be released from their difficulties.- ' and free from debt; and when any one of them shall be free from debt, he shall apply to my executors, the survivor <fcc., > who shall proceed to divide the property as before directed,. ; and allot to each one, so free from debt, his share, including ; the amount advanced to him as before stated; which shall .
 
 *183
 
 enure to him and his heirs forever: And thus in the same way shall every one receive his share, as he gets out of debt and applies for it, until all receive their shares. But if any one or more shall not get out of debt during his life, then his share to be allotted to his heirs living at hisdeath. The property willed to my wife, Í desire to be disposed of in the same manner: the shares of those who can take, being allotted to them forthwith, and-the shares of those involved in debt to be vested in my executors, the survivor &e., upon the same trusts and conditions with (he other property vested in them.” The testator then appointed-several persons his executors. In 1837", the two sons, Thomas and Albert, obtaiued a loan of $6,000, from the agency of the Bank established at Morganton, upon a promissory note made by them and George Summey, as their surety, payable to Avery, the agent of the Bank at that place. In 1839 a judgment was recovered in the name of Avery against all the makers of the note, and about the sum of gl,350 raised on a
 
 fieri facias,
 
 under which all the property of Summey was sold, and also all that of the principals that could- be found in this State, unless it be an interest under their father’s will. In March, 1841, those persons, Thomas and Albert Forney, having been arrested on a capias
 
 acl satisfaciendum, gave
 
 due notice to the Bank and Avery, and were discharged under the act for the relief of insolvent debtors. In that proceeding they filed schedules, which took no notice of any interest derived under the will, but included some effects and debts in Mississippi subject to specific liens in that Stale, which the plaintiffs here allege have exhausted them.
 

 The present bill is brought by the corporation and its agent, Mr. Avery, against all the defendants in the judgment at law, and also against the executors of Jacob Forney, and charges that the debtors have no estate capable of being taken in execution, and prays to have the two sonsr Thomas and Albert Forney, declared entitled, each, to one share or equal tenth part of the residue of- the testator’s estate, and that the same should be applied to- the satisfaction of the judgment.
 

 The defendants severally answered, but it is only materi
 
 *184
 
 al to notice, that the executors and trustees insisted that the sons had no interest under the will, which they could con- , , • r . vey or was subject to their debts.
 

 Our opinion is, that the bill cannot be sustained. It was said for the plaintiffs, that this is a gift on a condition, in disguise, that the donee should not alienate the property, but hold it exempt from debts. If it were so, we should hold it Void, as repugnant to the legal incidents of property; and trusts are governed in this respect by the same rules which govern legal estates. However anxiously the benefit of the donee personally may have been looked to by the donor, the policy of the law will not permit property or a trust to be so given, that the donee may continue to enjoy it after his bankruptcy, o'r shall not have the power of alienating an estate fully vested in him. Whatever benefit the
 
 cestui qua trust
 
 has in the property, his creditors may reach, either at law or in this court.
 
 Bradley
 
 v
 
 Peixoto,
 
 3 Ves. 325.
 
 Graves
 
 v
 
 Dolphin,
 
 1 Sim. 66. When one has a vested interest, absolutely in himself, or in some one for him, no restriction can be imposed, which will impair the powers of the owner as long as his ownership continues, or will repel his creditors.
 
 Snowden
 
 v
 
 Hales,
 
 6 Sim. 524. But property of every description, may be so settled and
 
 limited,
 
 that the person taking it shall hold
 
 until
 
 alienation, or insolvency or bankruptcy; and upon that event, that the estate should determine or go over to another person. Thus a stipulation or condition in a lease for the determination of the term on the bankruptcy of the lessee was held not to be against law or policy," nor to be repugnant, but merely a limitation.
 
 Hunter
 
 v
 
 Galleirs, 2
 
 T. R. 133. In
 
 Graves
 
 v
 
 Dolphin,
 
 the Vice-Chancellor said, the testator might, if he had thought fit, have made the annuity determinable upon the bankruptcy of his son. And in
 
 Broadox
 
 v
 
 Robinson,
 
 18 Ves. 433, Lord EldoN said, if property is given to a man for his life, the donor cannot take away the incidents of a life estate; but a disposition to a man until he shall become bankrupt, and, after his bankruptcy, over, is quite different from an attempt to give to him for his life, with a promise that he shall not sell nor alien. If that condition be so expressed, as to
 
 *185
 
 amount to a limitation, reducing the interest short of a life estate, neither the man nor his assigns can have it beyond the period limited. In
 
 Bournutt
 
 v Bedford, 6 T. Rep. 684, and 3 Ves. 148, it was held both in Law and in Equity, that an .annuity to B. ceased on his bankruptcy, which was-given by a will, distinctly, that B’s receipt only should b‘e a discharge for it, and that he should not alienate it, and that, if he did, it should determine. In
 
 Leives
 
 v Lewes, 6 Sim. 304, there was a trust to pay the rents to a son during hist life, for the maintenance of himself and his family,-but sons he should not have any power' to charge or alienate the' same: provided, that if the son should in any manner im-*-pede-or frustrate the trusts of the will, the'rents should no" longer be paid to him, but be accumulated by the trustees for the benefit of his children. The son conveyed his'interest in trust for his creditors; and it was held, that the rents-should thereupon accumulate as directed by the will.
 

 Those cases furnish examples of estates, actually vested and in the enjoyment of the lessee or donee, ceasing and reverting, or going over to a third person, upon limitations on the contingency of alienation or bankruptcy. There is nothing unlawful in it, so as to render it, as a condition subsequent, void, and the estate absolute.
 
 On jus est dáre, ejus est dAsponere.
 
 Much more is it competent for a testator to provide, as a condition going before the estate, that is to say, as a contingency on which the interest is, if ever, to arise; that the donee, who is then insolvent, should pay his debt3 or be able to pay them, either in whole or in part, before he-should take any thing. Such,- we think, is the case here. Nothing is given to the sons but in the event of their becoming, respectively, free of debt. Until that event they can take no benefit under the will, either from the capital or the profits; for it is clear, the whole goes together as one fund, to the sons, or to the ulterior donees, according to the event. Both the express words of the will and the declared motive of the testator establish, that the gifts did not “ vest at his death” nor
 
 “until
 
 they shall be free of debt.” Until the allotment of the shares of the two infant daughters, the trustees hold for accumulation; and their shares are
 
 *186
 
 to be as well of the profits np to that time, as of the capital. After that event, “ the property is to remain vested in the executors,” that is, as it was before; and they are, as the sons get out of debt and apply, to “ divide the property as before ¿|¡rected,” namely, including the profits. There is, therefore, to be no enjoyment of the profits, distinct from the estate itself; and the plaintiffs’ bill shews, that the event, on which the gilts to these sons were to vest, has not happened: for this debt was contracted before the making of the will, and was, no doubt, one of the very debts, to which the testator had reference, and it is admitted by the bill that the sons are yet insolvent. The bill must therefore be dismissed, and with costs to the executors.
 

 Per Curiam, Bill dismissed.